UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------- x
JAMES BUMPUS,                                    :
                                                 :
                             Petitioner,         :        MEMORANDUM & ORDER
                                                 :
              -against-                          :           97-CV-1791 (ENV)
                                                 :
WARDEN,                                          :
Clinton Correctional Facility                    :
                             Respondent.         :
                                                 :
-------------------------------------------------------------- x
```

**VITALIANO, D.J.**

Petitioner James Bumpus is once again before this Court on his petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the writ is denied

and his petition is dismissed.

**BACKGROUND**[1]

On September 6, 2007, the Court found that all but one of Bumpus's federal claims were

procedurally barred from habeas corpus review because they had not been "fairly presented" to

the New York Court of Appeals.[2]  Accordingly, the Court dismissed those claims on exhaustion

grounds.  In its February 20, 2009 summary order, the Second Circuit vacated the dismissal of

---

[1] Though familiarity with the underlying facts is presumed, for a more detailed discussion of the underlying state prosecution and overall procedural history, see Bumpus v. Superintendent of Clinton Corr. Facility, 507 F. Supp. 2d 246 (E.D.N.Y. 2007), aff'd in part and rev'd in part, 311 Fed. Appx. 400 (2d Cir. 2009).
[2] The Court rejected Bumpus's remaining claim—that the courtroom was improperly closed during Bumpus's murder trial—on the merits.  The Second Circuit affirmed, noting that the Court's ruling on this point was beyond the scope of the Court's Certificate of Appealability.  See Bumpus, 311 Fed. Appx. at 402-03.

Bumpus's petition and remanded for further proceedings.  See Bumpus, 311 Fed. Appx.

Specifically, the Circuit held the Court's judgment to be at odds with Morgan v. Bennett, 204

F.3d 360 (2d Cir. 2000), in which the Circuit determined that, where a petitioner's "first letter to

the [New York] Court of Appeals seeks leave to appeal all arguments raised in attached

Appellate Division briefs, a follow up letter addressing only some of those arguments in more

detail does not serve to narrow the scope of the claims 'fairly presented' by the first letter."  311

Fed. Appx. at 401 (citing Morgan, 204 F.3d at 370; Davis v. Strack, 270 F.3d 111, 122-23 (2d

Cir. 2001)).  The Second Circuit, having found that "nothing in Bumpus's August 8[, 1990] letter

'affirmatively directed the Court of Appeal's attention away from claims contained in the

attached briefs,'" id. at 402 (citing Galdamez v. Keane, 394 F.3d 68, 76 (2d Cir. 2005)), rejected

this Court's conclusion that the state's high court had been deprived of an opportunity to review

the claims now re-presented here in Bumpus's petition for habeas corpus.  The silence in

Bumpus's pro se letter about these claims while advancing another claim was not tantamount to

a withdrawal of all the unmentioned claims that were contained in the briefs to the Appellate

Division, which had been attached to his counsel's initial request for leave to appeal.  Id. at 401-

02.  The Second Circuit noted, however, that it expressed no opinion as to the merits of the

claims that this Court had dismissed as procedurally barred or as to whether Bumpus had

exhausted his challenge to the admission at trial of certain grand jury testimony (mentioned in

his brief to the Appellate Division).[3]  Id. at 402.

Following remand, Bumpus filed a memorandum of law in support of his petition on July

3, 2009.  Relying on the nine claims[4] for relief argued in his previously submitted memoranda,

_____

[3] Nor did this Court address this claim in its previous opinion.
[4] Bumpus's courtroom closure claim was rejected in the last round of litigation.  See Bumpus, 507 F. Supp. 2d at
263-66.  The Second Circuit affirmed.  See Bumpus, 311 Fed. Appx. at 403-03.

Bumpus further argues now that he was "denied due process and equal protection by the arbitrary denial of his application for leave to appeal to the Court of Appeals," given that "his identically situated co-defendant was granted such leave and access." (Brief of Petitioner-Appellant James Bumpus (Doc. #64 ("Bumpus Br.")) at 9.) The district attorney answered, arguing, inter alia, that Bumpus's claim that he was deprived of his rights to equal protection and due process does not warrant habeas relief. Following Bumpus's reply, the motion was submitted for decision.

**STANDARD OF REVIEW**

As is well-engrained now, driven by AEDPA,[5] a federal court is not free to issue a writ of habeas corpus under the independent "contrary to" clause of §2254 unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., for the Court, Part II) (citation omitted). Similarly, a federal court cannot issue the writ under the independent "unreasonable application" clause unless "the state court identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Id. at 413. But, a state court's "unreasonable application" of law must have been more than "incorrect or erroneous": it must have been "'objectively unreasonable.'" Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (citing Williams, 529 U.S. at 409 (O'Connor, J., for the Court, Part II)). Lastly, claims that were not

---

[5] Bumpus filed his habeas application after the effective date of AEDPA and is, ceteris paribus, subject to its provisions. See, e.g., Bumpus v. Warden, No. 98-CV-2406, 1999 U.S. App. LEXIS 3702 (2d Cir. Mar. 4, 1999).

adjudicated on the merits in state court are not subject to the deferential standard[6] that applies under AEDPA.  See, e.g., <u>Cone v. Bell</u>, 129 S. Ct. 1769, 1784 (2009) (citing 28 U.S.C. § 2254(d)).

## DISCUSSION

In its September 6, 2007 decision, the Court stated that, to the extent that Bumpus claimed that the New York Court of Appeals denied him equal protection on his appeal vis-à-vis its handling of the appeal of his co-defendant Rodney Russ, such claim was baseless because "[t]he disparate outcomes resulted not from an unfair application of a rule, but from the presentation of different issues for review."  See <u>Bumpus</u>, 507 F. Supp. 2d at 261 n.8 (citation omitted).  The Second Circuit's holding on the appeal of that decision works a very significant change:  the finding of differing issue presentment is no longer supportable.  The Circuit has determined that Bumpus, however mercurially, fairly presented to the New York Court of Appeals the very same issues presented by Russ, including the improper admission of the grand jury testimony of witness Gonzalez—the ground on which Russ not only won leave to appeal but reversal.  See, e.g., <u>id.</u> at 255-56.  Thus, the majority of Bumpus's remaining habeas claims[7] may

---

[6] Under AEDPA's deferential standard of review, "[d]etermination of factual issues made by a state court 'shall be presumed to be correct,' and the applicant 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'"  <u>Smith v. Herbert</u>, 275 F. Supp. 2d 361, 365-66 (E.D.N.Y. 2003) (quoting 28 U.S.C. § 2254(e)(1)).

[7] The claims raised in Bumpus's Appellate Division briefs, and in support of his petition, are as follows:  the prosecutor improperly impeached Lawrence and Gonzalez with their grand jury testimony; Lawrence was coerced into testifying against Bumpus; the prosecutor improperly elicited that Lawrence had made a prior inconsistent statement out of fear; the prosecutor improperly elicited that Lawrence had made a prior consistent statement; the prosecutor became an unsworn witness against Bumpus; it was improper to elicit that a witness declined to be polygraphed; the prosecutor's improper remarks deprived Bumpus of a fair trial; based upon the evidence in chief, Bumpus was not proven guilty beyond a reasonable doubt; cumulative errors deprived Bumpus of a fair trial; and, from Bumpus's supplemental Appellate Division filing—but not before this Court on habeas review—the trial court erred in permitting in-court identification.  <u>See, e.g.</u>, <u>Bumpus</u>, 507 F. Supp. 2d at 254; Supplemental Memorandum of Law (Doc. #40); Appellant's Supplemental Brief on Appeal to the Appellate Division, dated Jan. 30, 1990; Brief of Defendant-Appellant to the Appellate Division, dated June 10, 1989.

be addressed on the merits pursuant to AEDPA's deferential standard of review, since they were clearly adjudicated by the Appellate Division. Ultimately, none is meritorious.

In addition to these claims, Bumpus raised an argument in state court (for example, on a pro se motion for reconsideration to the Appellate Division) following the reversal of Russ's conviction that "the due process [and] equal protection clause of the Fourteenth Amendment dictates that each similarly [situated] criminal defendant must receive the same application of the law." (Memorandum of Law in support of motion for reconsideration to Appellate Division, dated Aug. 29, 1994, at 1.) On the instant remand, Bumpus renews that argument, claiming that he was "denied due process and equal protection by the arbitrary denial of his application for leave to appeal to the Court of Appeals," given that "his identically situated co-defendant was granted such leave and access." (Bumpus Br. at 9.) Though vexing, this constitutional claim fails whether reviewed under AEDPA's deferential standard or de novo. See Knowles v. Mirzayance, 129 S. Ct. 1411, 1415 (2009) (deciding a habeas corpus petition under both standards of review).

Viewed through the AEDPA prism, the denial of Bumpus's applications for leave to appeal by the New York Court of Appeals was not contrary to, nor did it involve an unreasonable application of, clearly established federal law (pertaining to the due process clause, the equal protection clause, or otherwise). See 28 U.S.C. § 2254(d)(1). In such circumstance, given the absence of any holdings from the Supreme Court regarding a due process or an equal protection right to file a discretionary appeal,[8] the Court has no authority, under 28 U.S.C. § 2254, to grant Bumpus's petition for habeas corpus on this ground. See Carey v. Musladin, 549 U.S. 70, 77

---

[8] An appeal to the New York Court of Appeals is a discretionary appeal. See N.Y. CRIM. PROC. LAW §§ 450.90(1), 460.20.

(2006); see also Wright v. Van Patten, 552 U.S. 120, 126 (2008); cf. Evitts v. Lucey, 469 U.S. 387, 402 (1985); Harris v. Rivera, 454 U.S. 339, 342 (1981) (reversing habeas relief grounded on strength of co-defendant's acquittal at the same trial where the Second Circuit's "constitutional holding was unprecedented"); Cupp v. Naughten, 414 U.S. 141, 146 (1973) (stating, in the context of a challenged jury instruction, that, "[b]efore a federal court may overturn a conviction resulting from a state trial . . ., it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.").

In any event, even reviewing the disparate judicial treatment claim asserted by Bumpus unfettered by AEDPA, the Court finds that the refusal of the New York state courts to accord him the benefit of the Russ ruling as reflected in the denials of his post-judgment motions and of his leave to appeal applications were not violations of equal protection or of due process. In addition, Bumpus's claim regarding the admission of the grand jury testimony of witnesses Lawrence and Gonzalez fails under the exhaustion doctrine, and, further, even if it were not unexhausted, would fail on the merits. A similar fate befalls petitioner's remaining claims, that is, though exhausted, as determined by the Circuit, they are ultimately meritless.

## I.    The New York Court of Appeals' Denial of Bumpus's Application for Leave to Appeal Was Not Contrary to Clearly Established Federal Law

For almost all criminal appeals, the New York Court of Appeals is a court of discretionary appeal and, for coram nobis petitions, the Appellate Divisions are likewise. See N.Y. CRIM. PROC. LAW §§ 450.90(1), 460.20. The saga of the two co-defendants grew intense when New York's high court granted leave to co-defendant Russ, announced a new rule of state

criminal procedure, and reversed his conviction.  The same state court system had refused leave

to Bumpus repeatedly (even after <u>Russ</u> was handed down) and let his conviction at the same trial

of the same charges and on the same evidence before the same judge and jury stand.  Given the

disparate results on identical facts and law, Bumpus challenges the discretionary criminal justice

process and the substantive product of its handiwork.  He does not cite to, and the Court has not

found, any reported Supreme Court decisions holding that there is a right through any federal

constitutional or statutory provision that guarantees the convicted access to a court of

discretionary appeal.  <u>See also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 756 (1991); <u>Pennsylvania

v. Finley</u>, 481 U.S. 551, 555-56 (1987); <u>cf.</u> <u>Ross v. Moffitt</u>, 417 U.S. 600, 614-16 (1974)

(holding that criminal defendants have a right to counsel only on appeals as of right, not on

discretionary state appeals); <u>id.</u> at 610, 619.  This is not surprising, both because of the very

nature of a discretionary appeal and because "there is no federal constitutional right to state

appellate review of state criminal convictions."  <u>Estelle v. Dorrough</u>, 420 U.S. 534, 536 (1975)

(citations omitted); <u>see also</u> <u>Halbert v. Michigan</u>, 545 U.S. 605, 610 (2005) ("The Federal

Constitution imposes on the States no obligation to provide appellate review of criminal

convictions." (citation omitted)); <u>Ross</u>, 417 U.S. at 611 ("[I]t is clear that the State need not

provide any appeal at all." (citation omitted)); <u>Griffin v. Illinois</u>, 351 U.S. 12, 18 (1956) ("It is

true that a State is not required by the Federal Constitution to provide appellate courts or a right

to appellate review at all." (citation omitted)); <u>McKane v. Durston</u>, 153 U.S. 684, 687 (1894)

("An appeal from a judgment of conviction is not a matter of absolute right, independently of

constitutional or statutory provisions allowing such appeal."  Plainly, "[a] review by an appellate

court of the final judgment in a criminal case . . . is not . . . a necessary element of due process of

law.  It is wholly within the discretion of the State to allow or not allow such a review."); <u>cf.</u>

<u>Chalk v. Kuhlmann</u>, 311 F.3d 525, 528 (2d Cir. 2002) ("The appellant has no right to have his appeal heard by the [New York] Court of Appeals. Whether the appeal will be heard in the Court of Appeals is a discretionary decision." (citing N.Y. CRIM. PROC. LAW § 460.20(4))).

Quite to the contrary of petitioner's essential grievance, there is at least one Supreme Court decision suggesting that a habeas court is without authority to set aside a conviction where the ground advanced was simply that state courts allowed to stand a conviction on a verdict inconsistent with the verdict rendered in the same trial for a co-defendant. <u>See</u> <u>Harris</u>, 454 U.S. In <u>Harris</u>, the Second Circuit held that the state court judge had rendered inconsistent verdicts in convicting the petitioner but acquitting his co-defendant. The Circuit then entered an order requiring that the petitioner be granted a new trial or that the state trial court be required to demonstrate that there was a rational basis for the facially inconsistent verdicts. <u>Id.</u> at 341-42. The Supreme Court reversed, holding that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside." <u>Id.</u> at 345. Indeed, even if the state court judge made an error of law in acquitting the co-defendant, "[t]here is no reason -- and surely no constitutional requirement -- that such an error pertaining to the case against [the co-defendant] should redound to the benefit of" the startled habeas petitioner. <u>Id.</u> at 347.

By analogy, then, assuming New York courts erred under New York law in granting Russ leave to appeal, there is no constitutional requirement that Bumpus become the co-beneficiary of such bad judgment. <u>See</u> <u>Standefer v. United States</u>, 447 U.S. 10, 25 (1980) ("[W]e are thus inclined to reject, at least as a general matter, a rule that would spread the effect of an erroneous acquittal to all those who participated in a particular criminal transaction." (citation omitted)). As the Supreme Court noted in <u>Beck v. Washington</u>, "the Fourteenth Amendment does not 'assure uniformity of judicial decisions . . . [or] immunity from judicial error . . . .' Were it

otherwise, every alleged misapplication of state law would constitute a federal constitutional question." 369 U.S. 541, 554-55 (1962) (quoting <u>Milwaukee Elec. Ry. & Light Co. v. Wisconsin ex rel. Milwaukee</u>, 252 U.S. 100, 106 (1920)); <u>see also</u> <u>Matos v. Irvin</u>, No. 95-2855, 1996 U.S. App. LEXIS 30024, at *5 (2d Cir. Nov. 15, 1996) (stating that petitioners had failed to demonstrate that, of the two inconsistent decisions from the appellate court, "theirs was wrong. Their argument depends on the proposition that a ruling of law that benefits one defendant in a criminal case must be applied to the benefit of all similarly situated defendants, regardless whether the ruling is correct. There is no support in law for such a contention." (citing <u>Harris</u>, 454 U.S. at 347)).

Cases relied upon by Bumpus are not at odds. <u>Cochran v. Kansas</u>, for example, addressed a claim that officials of the state penitentiary sabotaged appeal documents that petitioner had prepared, causing petitioner to miss the two-year limitation period allowed by state statute. 316 U.S. 255, 256 (1942). The Supreme Court reversed the denial of his petition for habeas corpus, stating that, if the petitioner's allegations held true, there was a clear violation of the equal protection clause. <u>Id.</u> at 257. Here, there was no state interference with Bumpus's right to appeal. That the New York courts denied leave does not mean that Bumpus was refused any right or privilege of appeal that was afforded to his co-defendant or anyone else. <u>See id.</u> at 258; <u>see also</u> N.Y. CRIM. PROC. LAW §§ 450.90(1), 460.20.

Another, <u>Griffin</u>, restates the obvious: "all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'" 351 U.S. at 17 (citation omitted). It adds nothing to petitioner's argument. The Supreme Court was simply referring to the fact that due process and equal protection rights protect all persons, rich and poor, from invidious discrimination at all stages of criminal proceedings. <u>Id.</u> at 17-18

(citations omitted).  The cite is an _ipse dixit_; it in no way gives guidance as to whether the disparate results rendered to Bumpus and Russ sprang from any form of invidious discrimination suffered by Bumpus—and that Bumpus was in any way unequal before the bar of New York justice.[9]

The Court finds that Bumpus has "no constitutional ground to complain" that the New York Court of Appeals, in exercising the discretion granted it by state law, denied his initial application for leave to appeal and, accordingly, a writ of habeas corpus cannot issue on this ground.  See Harris, 454 U.S. at 348.

## II.     The Failure of New York Courts to Grant Bumpus the Substantive Relief Granted Russ Does Not Constitute a Violation of Due Process or Equal Protection[10]

### A.     Due Process

"[T]he touchstone of due process is protection of the individual against arbitrary action of government."  County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) (internal quotation marks and citation omitted).  Though due process claims ordinarily call for an assessment of the

---

[9] Other cases upon which Bumpus relies are similarly unhelpful to his cause.  See Lucey, 469 U.S. at 402 (holding, narrowly, that the due process clause guarantees a criminal defendant the right to counsel on a first appeal as of right (citing Douglas v. California, 372 U.S. 353 (1963))); Rinaldi v. Yeager, 384 U.S. 305, 308 (1966) (finding—in a case in which the defendant was free to file his ultimately unsuccessful appeal—that state law requiring only a certain class of unsuccessful appellants to repay the cost of obtaining a trial transcript violated the requirements of the equal protection clause); Dowd v. United States, 340 U.S. 206, 208 (1951) (stating "that a discriminatory denial of the statutory right of appeal is a violation of the Equal Protection Clause of the Fourteenth Amendment" (emphasis added)).

[10] The Court assumes that Bumpus and Russ could constitute different "classes of one."  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  The Supreme Court has recognized equal protection claims brought by a "class of one," that is, an individual plaintiff alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" without alleging membership in a class or group.  Id. at 564 (citations omitted).  This is in keeping with the Supreme Court's explanation that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  Id. (internal quotation marks and citations omitted).

fairness of actions taken by co-ordinate branches of government, courts, nonetheless, are also a part of government and citizens are just as much entitled to protection from judicial arbitrariness. Consequently, courts are not free to impose their "'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.'" Dowling v. United States, 493 U.S. 342, 352-53 (1990) (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)).

Due process guarantees Bumpus and all convicted defendants an as of right "'adequate opportunity to present [their] claims fairly in the context of the State's appellate process.'" See Lucey, 469 U.S. at 402 (quoting Ross, 417 U.S. at 616). New York, of course, provides a multi-tier direct appellate process. Since New York provides for such appeals, the substantive appeal that due process guarantees is to New York's Appellate Division courts. Due process does not, however, require that Bumpus be guaranteed a merits appellate determination by the New York Court of Appeals, a court of discretionary appeal, or, similarly, by the United States Supreme Court, accessible only by grant of discretionary certiorari. See N.Y. CRIM. PROC. LAW §§ 450.90(1), 460.20; cf. Coleman, 501 U.S. at 756; Ross, 417 U.S. at 610, 614-16, 619. That Russ perhaps received "more" process does not mean that Bumpus did not receive "due" process; nor is Russ's fate relevant to the due process inquiry sought by Bumpus. See, e.g., Ross, 417 U.S. at 609 ("'Due process' emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated."); see also Standefer, 447 U.S. at 26 (finding that petitioner had received a fair trial at which the government had borne and met the burden of proving beyond reasonable doubt that petitioner had aided and abetted a crime, even when the principal was acquitted. Petitioner "was entitled to no less -- and to no more."); United States v. Dotterweich, 320 U.S. 277, 279 (1943) ("Equally baseless is the claim of [defendant] that, having failed to find the corporation guilty, the jury

could not find him guilty. Whether the jury's verdict was the result of carelessness or compromise or a belief that the responsible individual should suffer the penalty instead of merely increasing, as it were, the cost of running the business of the corporation, is immaterial. Juries may indulge in precisely such motives or vagaries." (citation omitted)).

B.     Equal Protection

"Central both to the idea of the rule of law and to our own Constitution's guarantee of equal protection is the principle that government and each of its parts remain open on impartial terms to all who seek its assistance."  Romer v. Evans, 517 U.S. 620, 633 (1996).

The Court divides its equal protection analysis into three categories:  (1) absent certain narrowly drawn exceptions, a criminal defendant has no right to the retroactive application of a change in precedent; (2) an equal protection violation cannot be shown solely through disparate litigation results; and (3) even if there were a right to the retroactive application of a changed precedent, and even if there were an equal protection violation where the results in litigation are different in like circumstances, the New York Court of Appeals had a rational basis for treating Russ and Bumpus differently.

1.     A change in a rule of criminal procedure need not be retroactive

In arguing that he was denied equal protection because the Court of Appeals denied him leave on reconsideration following its reversal of Russ's identical judgment of conviction, Bumpus effectively asks this Court to find that the New York Court of Appeals committed constitutional error in failing to apply its decision in People v. Russ, 79 N.Y.2d 173, 581 N.Y.S.2d 152, 589 N.E.2d 375 (1992), and People v. Russ, 77 N.Y.2d 966, 570 N.Y.S.2d 500, 573 N.E.2d 588 (1991), retroactively to him.  For, though dressed up in highly unusual facts,

when stripped to its essentials, petitioner seeks nothing more than the retroactive application of a newly adopted criminal procedure rule, hardly a novel quest. See, e.g., Whorton v. Bockting, 549 U.S. 406, 416 (2007); Saffle v. Parks, 494 U.S. 484, 488 (1990) ("The explicit overruling of an earlier holding no doubt creates a new rule."); Teague v. Lane, 489 U.S. 288, 301 (1989) ("[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." (citation omitted)). There is, more critically, no constitutional requirement that such criminal procedure-changing precedents be retroactively applied. Absent certain narrow exceptions[11]—inapplicable here—a court will not disrupt a conviction that is the product of a final direct appeal to apply a new rule, even when this means treating certain classes of defendants differently. See, e.g., Bockting, 549 U.S. at 416-421 (declining to apply the rule set out in Crawford v. Washington, 541 U.S. 36 (2004), retroactively to defendants who had suffered Crawford violations but whose convictions had become final prior to the rule's announcement, while applying the rule prospectively to other defendants who had suffered Crawford violations but whose direct appeals were not yet final); see also Teague, 489 U.S. at 305-311 (clarifying how the question of retroactivity should be resolved in cases on collateral review and holding that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced"); Mackey v. United States, 401 U.S. 667, 682-95 (1971) (Harlan, J., concurring in judgments in part and dissenting in part) (arguing that, absent certain exceptions, new rules should not be applied retroactively to cases on collateral review and noting that habeas corpus is not a substitute for direct review).

---

[11] See Bockting, 549 U.S. at 416 ("A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a '"watershed rul[e] of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.'" (quoting Saffle, 494 U.S. at 495)). Under Saffle, "substantive" means "a 'substantive categorical guarante[e] accorded by the Constitution.'" 494 U.S. at 494 (citation omitted).

Without doubt, the New York Court of Appeals recognized a new rule of criminal procedure in Russ, expressly overruling the Appellate Division's interpretation of People v. Fitzpatrick, 40 N.Y.2d 44, 386 N.Y.S.2d 28, 351 N.E. 675 (1976) (and, with it, N.Y. Crim. Proc. Law § 60.35), which was controlling when the court denied Bumpus leave to appeal from the affirmance of his conviction by the Second Department on his direct appeal. See People v. Russ, 167 A.D.2d 361, 562 N.Y.S.2d 444 (App. Div. 2d Dep't 1990); People v. Bumpus, 163 A.D.2d 484, 558 N.Y.S.2d 587 (App. Div. 2d Dep't 1990); see also Saffle, 494 U.S. at 488 ("The explicit overruling of an earlier holding no doubt creates a new rule."). Relying upon the old interpretation of Fitzpatrick to Bumpus and Russ, the Appellate Division held that the witnesses' testimony at trial that they had not seen Bumpus or Russ in the vicinity of the crime scene, and that they had not observed the robbery and shooting, "completely negated their Grand Jury testimony to the effect that they had witnessed the defendant and his codefendant commit the crimes. Accordingly, their trial testimony affirmatively damaged the People's case and entitled them to introduce the witnesses' prior Grand Jury testimony." See Bumpus, 163 A.D.2d at 484, 558 N.Y.S.2d at 587 (citing N.Y. Crim. Proc. Law § 60.35; Fitzpatrick, 40 N.Y.2d at 51, 386 N.Y.S.2d at 32, 351 N.E. at 679; People v. Coker, 134 A.D.2d 507, 521 N.Y.S.2d 96 (App. Div. 2d Dep't 1987)); see also Russ, 167 A.D.2d at 362, 562 N.Y.S.2d at 445. The Court of Appeals, however, following the grant of leave presumably to make the point, held in Russ that "the flagrant use of Gonzalez's Grand Jury testimony at trial transgressed the line drawn in People v. Fitzpatrick" and that "[t]he use of Grand Jury testimony in this manner was not made in good faith as required, but rather to circumvent the evidentiary rule protection against otherwise inadmissible evidence." Russ, 79 N.Y.2d at 178, 581 N.Y.S.2d at 155, 589 N.E.2d at 378. Stated from a chronological perspective, since Bumpus's conviction had become final on direct

appeal before this new (<u>Russ</u>) rule went into effect, in line with Supreme Court precedent, Bumpus was not constitutionally entitled as a matter of equal protection to the rule's retroactive application on a renewed challenge to his conviction. Consequently, this equal protection argument affords no basis for the issuance of the writ.[12]

2.    Equal protection violation cannot be shown solely through disparate litigation results

There is no constitutional command that the results obtained by identically situated but separately proceeding litigants be the same; so long as the process afforded each litigant was fair,[13] differences in result between the two are irrelevant to any constitutional analysis. <u>See</u> <u>Beck</u>, 369 U.S. at 555 (declining to vacate conviction on equal protection grounds where "it has not been shown that their ultimate end—a fair . . . proceeding—was not obtained" (citing <u>Graham v. West Virginia</u>, 224 U.S. 616, 630 (1912))); <u>see also</u> <u>Harris</u>, 454 U.S. at 345-47; <u>Beck</u>, 369 U.S. at 554-55 (quoting <u>Milwaukee Elec. Ry. & Light Co.</u>, 252 U.S. at 106)); <u>cf.</u> <u>Lindsley v. Natural Carbonic Gas Co.</u>, 220 U.S. 61, 78 (1911) ("A classification having some reasonable basis does not offend against [the equal protection] clause merely because it is not made with mathematical nicety or because in practice it results in some inequality."). A party fails to demonstrate a constitutional violation where his only evidence is that his result was different from someone else's. <u>See</u> <u>Dowling</u>, 493 U.S. at 353-54 ("[I]nconsistent verdicts are constitutionally tolerable." (citing <u>Standefer</u>, 447 U.S. at 25)); <u>Matos</u>, 1996 U.S. App. LEXIS 30024, at *4 (affirming the district judge's and magistrate judge's finding that "inconsistent

_____

[12] Of course, even if Bumpus were entitled to retroactive application of the rule announced in <u>Russ</u>, as a matter of state procedure, his claim would still fail here because the <u>Russ</u> rule involved only a matter of state law and not a federal constitutional claim. <u>See, e.g.</u>, <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

[13] Even this need not be the case necessarily. <u>See</u> <u>Beck</u>, 369 U.S. at 554 (stating that the misapplication of a law potentially requiring certain procedural safeguards cannot be shown to be an invidious discrimination).

outcomes in criminal trials are not unconstitutional unless the process leading to the divergent results involved a constitutional violation.").

Simply put, the unusual, only by comparison to each other, fates of Bumpus and Russ on their respective New York state appellate tracks are not enough on their own to demonstrate a violation of the right to equal protection of the laws. Yet, the only evidence that Bumpus presents on this claim is that he and Russ received different results when they applied for leave to appeal their judgments of conviction to the New York Court of Appeals following their arrest for the robbery and murder of the same victim; that they were indicted for the same crimes by the same grand jury in the same true bill; that they were prosecuted in the same courtroom at the same time; that they confronted the same witnesses before the same trial judge and jury; that they were convicted at the same moment and received the same sentence; and that the Appellate Division affirmed both convictions for the same reasons. See Bumpus, 507 F. Supp. 2d at 249. Procedurally, the disconnection of the two appeals following conviction headed the two co-defendants to vastly disparate results. Case law makes clear, nonetheless, that those disparate results alone, however incomprehensible to a broader public audience, do not contravene Bumpus's equal protection rights, nor do they support a writ of habeas corpus.

3.      The rational basis for different results

Where similarly (indeed identically) situated persons are treated differently by government, there must be at least a rational basis for the difference in treatment for it not to be a violation of the equal protection clause. See Engquist v. Or. Dep't of Agriculture, 553 U.S. 591, 128 S. Ct. 2146, 2153 (2008) (citing Olech, 528 U.S. at 564). As the Supreme Court has explained, "when conducting rational basis review '[a court] will not overturn . . . [government

16

action] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational.'" Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 84 (2000) (citing Vance v. Bradley, 440 U.S. 93, 97 (1979)); see also Able v. United States, 155 F.3d 628, 631 (2d Cir. 1998) ("As a general rule, the equal protection guarantee of the Constitution is satisfied when the government differentiates between persons for a reason that bears a rational relationship to an appropriate governmental interest.").

When tried and convicted, and, still later, on direct appeal to the Second Department, Bumpus and Russ not only stood identically before the bar of justice, but also they were treated precisely the same in result. But, as in any horse race, equal in the stretch matters not; all that matters is what happens at the finish line. And, in this horse race, at the finish, Russ's conviction was reversed and Bumpus's was not. If New York's criminal justice system can provide no rational basis for the difference, it is then in violation of the equal protection clause. The Court finds that a rational basis for the disparate results does exist.

The finding of a rational basis here is all the more compelled by the principle that, absent the most extraordinary of circumstances, federal courts have no business interfering in the legitimate affairs of state courts. See, e.g., Trainor v. Hernandez, 431 U.S. 434, 441 (1977) (noting that, "in a Union where both the States and the Federal Government are sovereign entities, there are basic concerns of federalism which counsel against interference by federal courts, through injunctions or otherwise, with legitimate state functions, particularly with the operation of state courts" (citing Younger v. Harris, 401 U.S. 37, 44 (1971))); cf. Coleman, 501 U.S. at 731 (citation omitted). As with the Supreme Court itself, discretionary appeals within a state court system serve an important function in matters of judicial economy. See, e.g.,

O'Sullivan v. Boerckel, 526 U.S. 838, 846 (1999) ("The fact that [a state] has adopted a discretionary review system may reflect little more than that there are resource constraints on the [state High] Court's ability to hear every case that is presented to it."). Obviously, with one of the busiest, if not the busiest, state court system in the United States, New York has a legitimate and enormous interest in husbanding its judicial resources. Further, and more illuminating, Russ is a sterling example of how and why high court discretionary appellate leave is used. The Court of Appeals granted leave in Russ not because it concluded that the Appellate Division had wrongly decided Russ's appeal on the extant precedent but, apparently, because it correctly followed precedent that the high court wanted to overrule. Russ was granted leave as a vehicle for the Court of Appeals to change a rule of criminal procedure in New York, at least as it had been interpreted by the Second Department. No one can ever forecast when a court is "ready" to make such a change or which appeal vehicle it will latch onto to accomplish it. Clearly, as noted above, discretionary appeals are a commonly understood part of the justice process, and an appellate court's using discretionary appeals to review and refresh its state's decisional law without the need to hear every case as a matter of appellate right certainly affords a rational basis for a process that grants leave to some and denies it to others. That the process played out in the ordinary course to treat disparately two men who stood at the start identically before the bar of justice, where the disparity results from a not unusual system of discretionary appeal, is not irrational. Rather, the disparity springs from a well-entrenched appellate practice.

The metaphorical case on all fours tendered in appellate argument is, here, identical in fact. Bumpus is the "real McCoy." Unfortunately for him, New York allows separate appellate tracks for defendants convicted of identical crimes at the same time before the same judge and jury on the identical evidence. The disparate results here could not have occurred otherwise.

Given that such disparate results might cause the community at large to question the legitimacy of a system allowing such to happen, New York may very well want to consider changing it in some way to avoid future disparate results in multi-defendant criminal appeals. But, that is not a matter for discussion on the instant petition since the Constitution does not require it. The simple fact is that without allegation, much less evidence, of an illegitimate intent by the Court of Appeals to punish Bumpus by granting leave to Russ but denying it to him,[14] petitioner offers nothing that would contravene the Court's finding that a rational basis exists for New York's system of discretionary appellate review which led to Bumpus's disparate and unsuccessful treatment as compared to Russ. Succinctly, the judicial decision-making leading to the disparate litigation result for Bumpus had a rational basis. With all else in his favor, there is no equal protection breach, and there are also no grounds to support issuance of a writ of habeas corpus.

Nor is the result changed by the actual refusal of New York to grant Bumpus relief on his multiple attempts to seek reconsideration of his conviction following the decision of the Court of Appeals in Russ. Any challenge here to the decisions of the state courts to adhere to their pre-Russ determinations presents the same wine in different bottles. At the time his conviction became final, there was no fundamental federal defect. The subsequent disparate result reached in Russ, as the Court has found, did not breach any right of Bumpus to due process and equal

---

[14] Bumpus neither claims nor demonstrates, for example, that the Court of Appeals singled him out for continued jail time based upon an impermissible consideration. McCleskey v. Kemp, 481 U.S. 279, 292 (1987) ("[A] defendant who alleges an equal protection violation has the burden of proving 'the existence of purposeful discrimination.'" (citations omitted)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009) ("Under extant precedent purposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.' It instead involves a decisionmaker's undertaking a course of action '"because of," not merely "in spite of,"' [the action's] adverse effects upon an identifiable group." (quoting Pers. Adm'r. v. Feeney, 442 U.S. 256, 279 (1979))); cf. Lalli v. Lalli, 439 U.S. 259, 273 (1978) ("Our inquiry under the Equal Protection Clause does not focus on the abstract 'fairness' of a state law, but on whether the statute's relation to the state interests it is intended to promote is so tenuous that it lacks the rationality contemplated by the Fourteenth Amendment."); United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974) ("'[The] conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'" (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962))); DeLuca v. Zenk, No. 04-CV-5233, 2006 U.S. Dist. LEXIS 30075, at *5 (E.D.N.Y. Feb. 7, 2006) ("[I]nmates are not a suspect class." (citation omitted)).

protection.  The fact that Bumpus, procedurally, gave the state courts every opportunity to change that disparate but not unconstitutional result and they refused to do so does not create a separate or different constitutional claim.  Analytically, in fact, an equal protection violation may have been engendered had New York granted leave to Bumpus in order to apply the Russ rule retroactively to him alone.  At that point, Bumpus was situated no differently than any other defendant whose conviction had become final through direct appeal on the strength of the Second Department's "erroneous" interpretation of Fitzpatrick and section 60.35 that Russ overruled.  The disparate treatment argument fails in all of its permutations.

### III.   Bumpus's Remaining Claims Fail

#### A.    The Admission of the Grand Jury Testimony of Lawrence and Gonzalez

Petitioner does not cross the habeas review threshold on this contention.  The Court finds that Bumpus did not fairly present to the Appellate Division on direct appeal his claim that the admission of the grand jury testimony of Lawrence and Gonzalez deprived him of a federal constitutional right to due process.  Bumpus, in his brief to the Second Department,[15] relied solely upon state law in advancing his claim regarding the use of grand jury testimony at trial for impeachment purposes, meaning that petitioner did not alert the Appellate Division to the federal nature of his claim.  See Baldwin, 541 U.S. at 29; see also Jones v. Keane, 329 F.3d 290, 295 (2d Cir. 2003) ("The claim presented to the state court . . . must be the 'substantial equivalent' of the claim raised in the federal habeas petition." (citations omitted)); Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982) (listing the "ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim").  Because it had not been so alerted, the

---

[15] See Bumpus Appellate Division Brief at 6 (citing N.Y. CRIM. PROC. LAW § 60.[35]; People v. Broadwater, 116 A.D.2d 1022, 498 N.Y.S.2d 638 (App. Div. 4th Dep't 1986); People v. Jordan, 59 A.D.2d 746, 398 N.Y.S.2d 556 (App. Div. 2d Dep't 1977)).

Appellate Division had neither reason nor "fair opportunity" to consider federal law in assessing the claim.  See, e.g., O'Sullivan, 526 U.S. at 844-45; see also Picard v. Connor, 404 U.S. 270, 275 (1971) (noting the policy of federal-state comity, which is "an accommodation of our federal system designed to give the State the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights" (internal quotation marks and citations omitted)); Smith v. Duncan, 411 F.3d 340, 349 (2d Cir. 2005) (stating, in a case concerning how raising a state evidentiary claim was insufficient to raise a federal due process claim, that, in determining whether a federal claim has been fairly presented, the focus should be on the degree of similarity between claims before the state court and before the federal court (citation omitted)).  Because the Appellate Division did not have a fair opportunity to consider Bumpus's federal due process claim, and because, in line with the Second Circuit's mandate on the previous appeal, the issues before the New York Court of Appeals on direct appeal were expanded to, but delimited by, the issues raised in petitioner's brief to the Appellate Division attached to the leave application filed by his counsel, this claim is, indeed, unexhausted at the state appellate level.  See Baldwin, 541 U.S. at 33; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Anderson v. Harless, 459 U.S. 4, 6-8 (1982) (per curiam); Petrucelli v. Coombe, 735 F.2d 684, 690 (2d Cir. 1984); see also 28 U.S.C. § 2254(b).  Since it is unexhausted, and since any attempt now to present this claim in New York state court would be procedurally barred by petitioner's failure to raise it on direct appeal, Bumpus's federal grand jury-related claim is not amenable to federal habeas review on the merits.  See, e.g., Coleman, 501 U.S. at 731-32 (citations omitted); Teague, 489 U.S. at 297 (citations omitted); Bossett v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994) (citation omitted); Grey v. Hoke, 933 F.3d F.2d 117, 120-21 (2d Cir. 1991) (citations omitted); George v. Garvin, No. 99-CV-3448, 2000 U.S. Dist. LEXIS 18707, at *5-*6 (E.D.N.Y. Dec. 7, 2000)

(citing, inter alia, N.Y. COURT RULES § 500.10(a)); see also N.Y. CRIM. PROC. LAW §§ 440.10(2)(c), 450.10(1); N.Y. COMP. CODES R. & REGS. Tit. 22 § 670.6(a).

Fundamental fairness does not require that this default be overlooked. See Teague, 489 U.S. at 297. In fact, Bumpus has demonstrated neither cause[16] for his procedural default nor actual prejudice resulting from the alleged violation of federal law—both of which are required. See, e.g., Dretke v. Haley, 541 U.S. 386, 393 (2004); Coleman, 501 U.S. at 720; see also DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004). Bumpus also cannot overcome this bar on federal habeas review because he has not demonstrated that the Court's failure to consider his claim will result in a fundamental miscarriage of justice. See Haley, 541 U.S. at 393 (citation omitted); id. at 394 ("'[F]or the most part, "victims of fundamental miscarriage of justice will meet the cause-and-prejudice standard."'" (quoting Carrier, 477 U.S. at 495-96)). Indeed, Bumpus has presented no evidence suggesting that he is "actually innocent", see id. at 393; Bousley v. United States, 523 U.S. 614, 623-24 (1998), and, as the Court stated previously, "the record raises no doubts as to his guilt." Bumpus, 507 F. Supp. 2d at 262.

Even if Bumpus had exhausted his claim concerning the allegedly improper impeachment of Lawrence and Gonzalez by the use of their grand jury testimony, the claim is grounded at its core in attacking the interpretation by New York courts of New York's evidentiary rules. See Guity v. Ercole, No. 07-CV-0728, 2007 U.S. Dist. LEXIS 82064, at *25 (S.D.N.Y. Nov. 6, 2007) ("[S]tate court decisions concerning the state evidentiary rules do not pose issues of constitutional dimension, unless it 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" (quoting Dowling, 493 U.S. at 352 (1990))); cf. Estelle v. McGuire, 502

---

[16] Petitioner perhaps could have sought to establish the ineffective assistance of appellate counsel as the cause of his failure to advance such a federal claim. Given the Court's conclusion on the substance that that admission of the impeaching grand jury testimony did not contravene a federal constitutional right, (see infra), whether petitioner's appellate counsel was ineffective in failing to advance such an argument is academic.

U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law." (internal quotation marks and citation omitted)); Beck, 369 U.S. at 554-55. That the New York Court of Appeals subsequently found the prosecutor's trial tactics to have been "unacceptable", Russ, 79 N.Y.2d at 178, 581 N.Y.S.2d at 155, 589 N.E.2d at 378, is of no moment, both because the rule prohibiting such tactics was determined not to apply retroactively, (see Part II.B.1, supra) and because the new rule was founded on state, and not on constitutional, grounds. As a result, this theory too affords no basis for habeas relief.

Finally, assuming the question was squarely presented for merit review, the trial court's decision to admit Lawrence's and Gonzalez's grand jury testimony solely for the purpose of impeaching their trial testimony contravenes no constitutional precedent. Cf. FED. R. EVID. 403, 607, 613, 801(d)(1); Crawford, 541 U.S. at 59 n.9[17] (citations omitted); McGuire, 502 U.S. at 67; California v. Green, 399 U.S. 149, 164 (1970) ("[T]he Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories."); United States v. Eisen, 974 F.2d 246, 262-63 (2d Cir. 1992) ("Where the Government has called a witness whose corroborating testimony is instrumental to constructing the Government's case, the Government has the right to question the witness, and to attempt to impeach him, about those aspects of his testimony that conflict with the Governments account of the same events."), cert. denied, 507 U.S. 998 (1993); United States v. Klein, 488 F.2d 481, 483

---

[17] Of course, because Bumpus's conviction became final prior to March 8, 2004, the date on which Crawford was decided, Crawford itself affords him no constitutional protection on his petition. Indeed, the Supreme Court has prohibited the retroactive application of a new legal rule—such as that expounded in Crawford—on collateral review. See Teague, 489 U.S. at 295-96; see also id. at 301 (O'Connor, J., concurring); McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003) ("Clearly established federal law, moreover, is law that is 'dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final.'" (quoting Williams, 529 U.S. at 381 (Stevens, J., concurring))).

(2d Cir. 1973) (citing, inter alia, United States v. Borelli, 336 F.2d 376 (2d Cir. 1964), cert. denied, 379 U.S. 960 (1965); United States v. De Sisto, 329 F.2d 929 (2d Cir. 1964), cert. denied, 419 U.S. 1091 (1974)); Perez v. Greiner, No. 01-CV-5522, 2002 U.S. Dist. LEXIS 18124, at *13-*15 (S.D.N.Y. Sept. 25, 2002) (citations omitted). See generally Crawford, 541 U.S.

In any event, the trial court not only allowed the testimony to be used for the sole purpose of impeachment, it also gave not one, but three limiting instructions to the jury exactly to that effect. (See Warden's Memorandum on Remand (Doc. # 66) at 13-14, 20.) Such "cautionary instructions" ameliorated any constitutional concern and, hence, it would not have been unreasonable for New York courts to reject such a constitutional argument. Yapor v. Mazzuca, No. 04-CV-7966, 2005 U.S. Dist. LEXIS 6597, at *56-*57 (S.D.N.Y. Apr. 19, 2005) ("Limiting instructions have been found to militate against a finding of constitutional error." (citations omitted)); see also Greer v. Miller, 483 U.S. 756, 766 n. 8 (1987); Perez, 2002 U.S. Dist. LEXIS 18124, at *13-*15. Most powerfully, in this light, even if merit review were appropriate now, the constitutional argument that Bumpus advances would not support the issuance of a writ of habeas corpus.[18]

---

[18] It stretches the imagination that the admission of Lawrence's and Gonzalez's grand jury testimony could be characterized as "harmless error," were it the case that the admission of their testimony constituted constitutional error. See Fry v. Pliler, 551 U.S. 112, 121-22 (2007) ("[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in [Brecht v. Abrahamson, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in" Chapman v. California, 386 U.S. 18 (1967)). Here, the grand jury testimony had the trial witnesses as the eyewitnesses to the robbery and murder. Surely the jury had ample reason to convict Bumpus (and Russ) based solely upon hearing the supposedly limited use grand jury testimony. The absence of constitutional error, however, obviates a "harmless error" analysis.

B.      The Remaining Claims

        The balance of petitioner's claims—virtually invisible in this round of briefing—fail

under AEDPA analysis, given that, not only was the previous adverse state court resolution of

them not contrary to, or an unreasonable application of, Supreme Court precedent, but they are

also without substantial merit.  Regarding, for example, Bumpus's claim that he was deprived of

a fair trial by the admission the trial testimony of recalcitrant witness Lawrence, because the jury

was aware of the circumstances under which it was hearing Lawrence's testimony, there was no

constitutional or other error for the testimony to have been permitted.  See, e.g., United States ex

rel. Portelli v. LaVallee, 469 F.2d 1239 (2d Cir. 1972), cert. denied, Portelli v. LaVallee, 411

U.S. 950 (1973).  Certainly, the jury was given the opportunity to determine whether to believe

Lawrence's trial testimony in light of the circumstances bringing her to the stand.[19]  The jury's

verdict in line with such testimony presents no basis for habeas relief.

        Bumpus also claims the trial court improperly allowed the prosecutor to question

prosecution witness Gonzalez about whether she had taken a polygraph test (she had not).  The

Court has found no Supreme Court precedent establishing that such a line of questioning is

improper.  Where the Second Circuit has addressed the matter, it has used "harmless error"

review, and in the context of a defendant's—not a prosecution witness's—refusal to be

polygraphed.  See, e.g., United States v. Kiszewski, 877 F.2d 210, 216 (2d Cir. 1989) (stating

that the prejudicial effect of a mention of polygraph test not taken must be judged by looking at

all of the circumstances).  Here, this line of impeachment questioning (to the extent that it can

_____

[19] The New York Court of Appeals found that Lawrence's testimony had been "'legally'" coerced.  Russ, 79 N.Y.2d
at 178, 581 N.Y.S.2d at 155, 589 N.E.2d at 378.  There was, however, no constitutional defect in admitting it.
Coerced or not, Lawrence took the stand and was subject to cross examination, a disinfectant for suspect testimony.
See Klein, 488 F.2d at 483 (holding that the admission of a witness' "disowned" grand jury testimony could be
supported by United States v. De Sisto, 329 F.2d, and that "[i]t is immaterial whether the reason for the witness'
denial of knowledge on the second appearance is fear, as it apparently was in" De Sisto).

properly be characterized as such) was complemented by the further impeachment of Gonzalez with her own grand jury testimony, rendering any error—had there been any error—harmless.

Next, petitioner claims that the prosecutor made improper remarks on summation. In his brief to the Appellate Division, Bumpus contended, inter alia, that the prosecutor made statements that invoked the prestige of the office of District Attorney. He further claims that the prosecutor improperly elicited that Lawrence had made a prior inconsistent statement out of fear; that the prosecutor improperly elicited that Lawrence had made a prior consistent statement; that the prosecutor became an unsworn witness against him; and, from his original pro se petition, that the prosecutor's bad faith use of both Lawrence's and Gonzalez's testimony violated the Sixth Amendment.

The Court notes first that a prosecutor's summation may be beyond what controlling practice rules permit without depriving a defendant of his constitutional rights. Indeed, "it 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted); see also Greer, 483 U.S. at 765 ("[T]o constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." (internal quotation marks and citations omitted)); Smith v. Phillips, 455 U.S. 209, 219 (1982) ("The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). Supreme Court precedents respect this customary wide latitude given to oral advocacy.

In line with this understanding, the Court finds that the Second Department's decision to reject Bumpus's summation claim was not contrary to clearly established federal law as

determined by the Supreme Court. Plainly, the prosecutor's summation neither manipulated nor misstated the evidence, nor put the prestige of the District Attorney's office behind the prosecution's case, see United States v. Brawer, 482 F.2d 117, 134 (2d Cir. 1973), "nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." Darden, 477 U.S. at 181-82 (citation omitted). Beyond that, the weight of the evidence against Bumpus suggests that any comment by the prosecutor—even if beyond the pale of the rules of procedure—did not prejudice petitioner before the jury.

Furthermore, the outcome on direct appeal was not objectively unreasonable. See Jimenez v. Walker, 458 F.3d 130,147 (2d Cir. 2006) (citing Sellan, 261 F.3d at 311-12). The Appellate Division could have reasonably concluded that the prosecutor's statements in summation did not "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process,'" or of any other constitutional right. Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). This Court certainly finds this to be true. Consequently, no relief on this ground is warranted.

The same reasoning can be applied to Bumpus's remaining prosecutor-related claims. The Court finds that the Appellate Division's rejection of them was not contrary to clearly established federal law as determined by the Supreme Court. Moreover, the outcome with respect to these issues on direct appeal was not objectively unreasonable. See Jimenez, 458 F.3d at 147 (citing Sellan, 261 F.3d at 311-12); see also, e.g., Klein, 488 F.2d at 483. To the extent that the prosecutor committed any error, the errors were, at most, in violation of state law and of evidentiary or practical rules. Regarding Bumpus's pro se Sixth Amendment claim, not only is it unexhausted, but it is also neither contrary to, nor an unreasonable application of, Crawford.

See, e.g., 541 U.S. at 59 n.9 (citations omitted); see also supra Part III.A. Thus, the Court finds that no relief is mandated on these grounds, either.

Next, Bumpus contends that he was not proven guilty beyond a reasonable doubt. As to this contention, the Court finds, first, that the Appellate Division's order affirming his conviction did not "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2). Indeed, in light of the evidence, it was not unreasonable for the state appellate courts to determine that Bumpus's guilt had been proven beyond a reasonable doubt.

Moreover, Bumpus has failed to show that the challenged state court determinations were contrary to, or an unreasonable application of, Supreme Court precedent, and specifically, the standard for insufficiency of evidence announced in Jackson v. Virginia, 443 U.S. 307 (1979). In assessing a claim regarding the sufficiency of trial evidence, a habeas court must view all "evidence in the light most favorable to the prosecution," and the applicant is entitled to habeas relief only if "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt'" based on the evidence adduced at trial. Flowers v. Fisher, 296 Fed. Appx. 208, 210 (2d Cir. 2008) (citing Jackson, 443 U.S. at 324, 326). Even when "'faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson, 443 U.S. at 326). Given that a reviewing court may not substitute its judgment for that of a rational jury, a petitioner "bears a very heavy burden" in challenging the sufficiency of evidence upon which he was convicted. Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir. 1997) (internal quotation marks and citation omitted). Surely, Bumpus has not

met this burden. There being no evidence of Bumpus's actual innocence in the record, and in light of the evidence actually adduced at his trial (for example, that offered by Lawrence, see, e.g., Russ, 79 N.Y.2d at 177, 581 N.Y.S.2d at 154, 589 N.E.2d at 377), the Court finds that no writ can issue on the basis of this contention.

At the bottom of the list, Bumpus claims that cumulative errors deprived him of a fair trial. The Appellate Division effectively but properly rejected this claim, having found that his claims of individual errors were without merit. See Bumpus, 163 A.D.2d at 485, 558 N.Y.S.2d at 588. Moreover, assuming notwithstanding the Appellate Division's conclusion that they were errors, Bumpus has failed to demonstrate that, whether considered separately or cumulatively, any of the "claimed errors were so prejudicial that they rendered [his] trial[] fundamentally unfair." Collins v. Scully, 878 F. Supp. 452, 460 (E.D.N.Y. 1995) (citing United States v. Araujo, 539 F.2d 287, 292 (2d Cir. 1976)); see also Dowling, 493 U.S. at 352 (noting that the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly"). To cut to the chase, regardless of the fact that the Appellate Division made no express ruling on the cumulative effect of the claimed errors, the Court finds on de novo review that there were no cumulative errors, or that there was no cumulative effect of errors, that deprived Bumpus of a fair trial. This last claim then, too, does not support habeas relief.

**CONCLUSION**

For the foregoing reasons, the petition for habeas corpus of James Bumpus is dismissed and the writ is denied. Nevertheless, the Court issues a Certificate of Appealability on petitioner's disparate treatment claim since reasonable jurists could disagree on this ground as to

whether Bumpus's petition should have been resolved differently.  See <u>Slack v. McDaniel</u>, 529

U.S. 473, 483-84 (2000).

      The Clerk is directed to enter judgment and to close this case.

SO ORDERED.

  Dated:  Brooklyn, New York
           April 6, 2010

                                     s/ENV
                                       ERIC N. VITALIANO
                                       United States District Judge